```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE CITY OF NEW YORK,

                            Plaintiff,
                                                                    **MEMORANDUM and ORDER**
        — against —
                                                                    06-CV-793 (SLT)(RER)
NATIONAL RAILROAD PASSENGER
CORPORATION,

                            Defendant.
------------------------------------------------------------X
```
**TOWNES, United States District Judge:**

The City of New York ("the City") brought this diversity action to recover costs that it incurred to relocate electrical facilities of the National Railroad Passenger Corporation ("Amtrak") from bridges owned by the City but spanning a railyard owned by Amtrak. The electrical facilities needed to be relocated so that maintenance work could be performed on the bridges. A deed executed in 1910 granted the City ownership of the bridges and an easement to continue and maintain the bridges and granted Amtrak the right to place attachments, such as the electrical facilities, on the bridges. In a memorandum and order dated December 9, 2008, this Court ruled that Amtrak's electrical facilities interfered with the City's property rights, as described in the 1910 deed, and found Amtrak liable to the City for the cost of relocating the electrical facilities. The parties were directed to submit a proposed judgment, and they now dispute the availability and rate of prejudgment interest.

## DISCUSSION[1]

**A.   Choice of Law**

The complaint in this action alleged federal jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332, and Amtrak neither disputed that basis for jurisdiction nor asserted an alternative basis. The City argues that New York law applies because, "[i]n a diversity case, state law governs the award of prejudgment interest." *Schipani v. McLeod*, 541 F.3d 158, 164–65 (2d Cir. 2008). State law governs prejudgment interest in diversity cases because "[t]he availability of prejudgment interest is a substantive, rather than procedural, question." *Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 93 (2d Cir. 1984). Amtrak, however, responds that the federal law of prejudgment interest should be applied because a ground for federal question jurisdiction exists. Specifically, Amtrak cites 28 U.S.C. § 1349, which grants jurisdiction when one of the parties is a corporation organized under federal law with half of its capital stock owned by the United States.

Even assuming *arguendo* that a basis for federal question jurisdiction exists, New York law applies to the issue of prejudgment interest in this action. "[T]he applicability of state law [regarding prejudgment interest] depends on the nature of the issue before the federal court and not on the basis for its jurisdiction." *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 692 n.13 (2d Cir. 1983) (citing *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 540 n.1 (2d Cir. 1956)). All of the claims in this action are based on state law, and, as a result, New York law governs the issue of prejudgment interest.

---

[1] The factual background is laid out in detail in the memorandum and order of December 9, 2008. Familiarity with the factual background is assumed in this memorandum and order.

B.  *Prejudgment Interest Is Authorized by Section 5001 of New York's Civil Practice Law and Rules (C.P.L.R.).*

The plain language of section 5001 of the New York C.P.L.R. authorizes an award of prejudgment interest.  Section 5001 specifies the types of actions in which prejudgment interest is available:

> Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, *or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property*, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

N.Y. C.P.L.R. 5001(a) (emphasis added).  In an order of December 9, 2008, this Court found that the electrical facilities owned by Amtrak interfered with the City's use of the bridges for street purposes and the City's easement to continue and maintain the bridges, which were granted by the 1910 deed.  The finding of liability arose from Amtrak's interference with the City's enjoyment of its property rights, which plainly falls within the scope of section 5001.  "Where a law is plain and unambiguous, . . . the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction."  *United States v. Fisher*, 6 U.S. (2 Cranch) 358, 399 (1805).

Although no further construction is necessary, this Court nonetheless rejects Amtrak's argument that the provision regarding interference with property rights encompasses only tortious interference with property, as distinguished from interference with property rights guaranteed by a deed.  Specifically, Amtrak relies on a 1950 report of the New York Law Revision Commission, which recommended that the Civil Practice Act, the predecessor of the C.P.L.R., be amended to include the property-right provision at issue here.  N.Y. Law Revision

Comm'n Rep. 95 (1950); Weinstein, Korn & Miller, 10 N.Y. Civil Practice ¶ 5001.05 (2008). Prior to the amendment, section 480 of the Civil Practice Act distinguished between two types of violations of property interests. N.Y. Law Revision Comm'n Rep., *supra*, at 99–100; Weinstein, Korn & Miller, *supra*, ¶ 5001.05. Prejudgment interest was available as of right when the violation of property rights was intentional, but prejudgment interest was discretionary when the violation was negligent. N.Y. Law Revision Comm'n Rep., *supra*, at 99–100; Weinstein, Korn & Miller, *supra*, ¶ 5001.05. The Commission recommended that the distinction between intentional and unintentional violations be abolished because the line between the categories had become unclear. N.Y. Law Revision Comm'n Rep., *supra*, at 99–102; Weinstein, Korn & Miller, *supra*, ¶ 5001.05. Section 5001 of the C.P.L.R., which reflects the recommendation of the Commission, "is broadly worded and is designed to obliterate all distinctions that may turn on the form of the action (except as to actions of an equitable nature), the type of property involved, the nature of the encroachment upon the plaintiff's property interests, or the nature of the damages suffered." Weinstein, Korn & Miller, *supra*, ¶ 5001.05 (citation omitted). In light of the Commission's goal of broadening the reach of prejudgment interest by eliminating distinctions among types of interference with property rights, this Court concludes that the Commission did not intend to exclude nontortious interference with property rights. The Commission's report does not provide a basis sufficient to ignore the plain meaning of section 5001, which authorizes prejudgment interest for interference with property rights guaranteed by a deed.

C.  *Calculation of Prejudgment Interest*

The New York C.P.L.R. sets the rate of prejudgment interest at 9% per annum. N.Y. C.P.L.R. 5004. New York law permits courts to exercise discretion regarding the rate of prejudgment interest only when discretion is authorized by statute or the action is equitable in nature. N.Y. C.P.L.R. 5001(a), 5004; *Urban v. B.R. Guest, Inc.*, 845 N.Y.S.2d 584, 585–86 (App. Div. 2007).

Amtrak erroneously argues that this Court has discretion to impose a rate of less than 9% because this action is equitable in nature. The posture of this action is unusual: the City and Amtrak entered into an agreement pursuant to which the City reimbursed Amtrak for the relocation of the electrical facilities but reserved the right to bring this action to recoup the cost. (Def. 56.1 ¶ 50; Pl. 56.1 Resp. ¶ 50). Nonetheless, the memorandum and order of December 9, 2008, awarded damages rather than restitution. Amtrak's refusal to pay for the relocation of the electrical facilities forced the City to bear the cost, and Amtrak is liable for damages as a result. That the City paid Amtrak, instead of a third party, to move the electrical facilities does not convert the relief into equitable restitution.

Even if the award were equitable in nature, this Court would exercise its discretion to set the rate of prejudgment interest at 9% per annum. Under New York law, a rate of 9% is a presumptively fair and reasonable attempt to estimate interest. *Rodriguez v. N.Y. City Hous. Auth.*, 689 N.E.2d 903, 906 (N.Y. 1997). Amtrak has not made any showing that the City would have been unable to obtain 9% interest on the sum in question.

Amtrak offers five unpersuasive reasons that the rate of interest should be lower than 9%: (1) federal funds appropriated to Amtrak would otherwise be diverted to state and local

governments; (2) the City waited more than two years before filing its complaint; (3) the Court did not issue its order until December 9, 2008, even though the cross-motions for summary judgment were fully briefed on April 23, 2007; (4) Amtrak cooperated with the City during discovery and stipulated to the amount of damages; (5) Amtrak allowed the City to undertake the bridge rehabilitation. Each of the first three reasons implicitly assumes that the City could not have obtained an interest rate of 9% had it invested the sum in question. In light of Amtrak's failure to present evidence that might overcome the presumption of fairness and reasonability, any delay by the City or the Court is immaterial, and the 9% rate does not effect an improper diversion of federal funds to the City. As for the final two reasons, Amtrak's cooperation during the bridge rehabilitation and the litigation does not entitle it to provide less than full compensation to the City for interfering with the City's property rights.

The parties have stipulated that the proper amount of damages is $5,738,305.60. Prejudgment interest is generally computed from the earliest date on which the cause of action existed. N.Y. C.P.L.R. 5001(b). When damages were incurred at various times, interest may be calculated upon all of the damages from a reasonable intermediate date. N.Y. C.P.L.R. 5001(b). The parties have stipulated that the City made payments for the relocation of the electrical facilities between January 14, 2000, and December 15, 2003, and that the midpoint of the payment dates was December 29, 2001. Accordingly, the City is entitled to $5,738,305.60 plus prejudgment interest at a rate of 9% per annum calculated from December 29, 2001, until the date of entry of judgment.

D.      ***Prejudgment Interest Is Not Prohibited by 49 U.S.C. § 24902(j).***

Amtrak argues that prejudgment interest is prohibited by 49 U.S.C. § 24902(j), which prevents state and local laws and regulations from burdening improvements undertaken by Amtrak:

> Applicable procedures. — No State or local building, zoning, subdivision, or similar or related law, nor any other State or local law from which a project would be exempt if undertaken by the Federal Government or an agency thereof within a Federal enclave wherein Federal jurisdiction is exclusive, including without limitation with respect to all such laws referenced herein above requirements for permits, actions, approvals or filings, shall apply in connection with the construction, ownership, use, operation, financing, leasing, conveying, mortgaging or enforcing a mortgage of (i) any improvement undertaken by or for the benefit of Amtrak as part of, or in furtherance of, the Northeast Corridor Improvement Project (including without limitation maintenance, service, inspection or similar facilities acquired, constructed or used for high speed trainsets) or chapter 241, 243, or 247 of this title or (ii) any land (and right, title or interest created with respect thereto) on which such improvement is located and adjoining, surrounding or any related land. These exemptions shall remain in effect and be applicable with respect to such land and improvements for the benefit of any mortgagee before, upon and after coming into possession of such improvements or land, any third party purchasers thereof in foreclosure (or through a deed in lieu of foreclosure), and their respective successors and assigns, in each case to the extent the land or improvements are used, or held for use, for railroad purposes or purposes accessory thereto. This subsection shall not apply to any improvement or related land unless Amtrak receives a Federal operating subsidy in the fiscal year in which Amtrak commits to or initiates such improvement.

49 U.S.C. § 24902(j).

Prejudgment interest may be applied in this case because section 24902(j) does not exempt Amtrak from its obligation to compensate property owners for its interference with their property rights. Had Amtrak borne the cost of relocating the electrical facilities at the outset, the City would have retained the ability to earn interest on the sum in question. An award of prejudgment interest merely places the City in the position it would have enjoyed absent

Amtrak's interference with its property rights and subsequent refusal to compensate. Section 24902(j) was intended to exempt Amtrak from burdens imposed by state and local governments; it was not intended to offer Amtrak a financial incentive — in the form of discounted compensation — to interfere unlawfully with the property rights of other entities. Federal agencies are not presumptively immune from awards of prejudgment interest, *Loeffler v. Frank*, 486 U.S. 549, 556–57 (1988), and neither is Amtrak.

### E. *Prejudgment Interest Is Not Prohibited by 49 U.S.C. § 24301(l).*

Amtrak argues that prejudgment interest is prohibited by 49 U.S.C. § 24301(l), which exempts Amtrak from taxes, fees, and charges imposed or levied by state or local governments:

> Exemption from taxes levied after September 30, 1981. — (1) In general. — Amtrak, a rail carrier subsidiary of Amtrak, and any passenger or other customer of Amtrak or such subsidiary, are exempt from a tax, fee, head charge, or other charge, imposed or levied by a State, political subdivision, or local taxing authority on Amtrak, a rail carrier subsidiary of Amtrak, or on persons traveling in intercity rail passenger transportation or on mail or express transportation provided by Amtrak or such a subsidiary, or on the carriage of such persons, mail, or express, or on the sale of any such transportation, or on the gross receipts derived therefrom after September 30, 1981. In the case of a tax or fee that Amtrak was required to pay as of September 10, 1982, Amtrak is not exempt from such tax or fee if it was assessed before April 1, 1997.

49 U.S.C. § 24301(l).

Courts interpreting section 24301(l) have distinguished between involuntary assessments and voluntary rents. In *National Railroad Passenger Corp. v. Pennsylvania Public Utility Commission*, the Third Circuit held that section 24301(l) prohibited a state public utility commission from requiring Amtrak to contribute to the cost of maintaining a public bridge over tracks owned by Amtrak. 848 F.2d 436, 437, 440 (3d Cir. 1988). Subsequently, in *National Railroad Passenger Corp. v. City of New York*, the Second Circuit held that Amtrak's exemption

8

did not extend to a rental fee charged by the City of New York for the use of public areas. 882 F.2d 710, 711–12, 716 (2d Cir. 1989). The Court reasoned that section 24301(l) does not exempt Amtrak from voluntary payments in return for a benefit and distinguished *Pennsylvania Public Utility Commission* on the ground that the bridge maintenance fee, unlike the rental fee in *City of New York*, was not voluntary. *Id.* at 716 & n.2.

Prejudgment interest is more analogous to the voluntary rental payments in *City of New York* than the mandatory maintenance fee in *Pennsylvania Public Utility Commission*, and, as a result, section 24301(l) does not prohibit prejudgment interest in this case. After voluntarily interfering with the City's property rights, Amtrak voluntarily retained the benefit of the money rightfully due the City and deprived the City of the interest that it could have earned on that money. Amtrak could have avoided the imposition of prejudgment interest by either complying with the terms of the 1910 deed or immediately compensating the City. Section 24301(l) exempts Amtrak from taxes, fees, and charges imposed by state and local governments; it does not exempt Amtrak from its obligation to compensate property owners fully after it unlawfully interferes with their property rights.

Amtrak also argues that, even if the imposition of prejudgment interest as a general matter does not violate section 24301(l), the New York rate of 9% is impermissibly high. Amtrak's argument fails because there is no indication that the 9% rate represents a penalty or charge instead of a reasonable attempt to calculate interest. Under New York law, the 9% rate is a presumptively fair and reasonable attempt to estimate interest, *Rodriguez v. N.Y. City Hous. Auth.,* 689 N.E.2d 903, 906 (N.Y. 1997), and Amtrak has made no showing to the contrary.

9

F. *Prejudgment Interest Is Not Prohibited by 49 U.S.C. § 24301(g).*

Amtrak also argues that prejudgment interest is prohibited by 49 U.S.C. § 24301(g), which exempts Amtrak from state and local laws related to rates, routes, or service:

> Nonapplication of rate, route, and service laws. — A State or other law related to rates, routes, or service does not apply to Amtrak in connection with rail passenger transportation.

49 U.S.C. § 24301(g). Amtrak's argument fails because an award of prejudgment interest is not related to rates, routes, or service. The award of prejudgment interest merely represents compensation to the City for Amtrak's interference with the City's property rights and subsequent deprivation of the City's ability to earn interest on the sum in question.

## CONCLUSION

Judgment is granted in favor of the plaintiff in the amount of $5,738,305.60 plus prejudgment interest at a rate of 9% per annum calculated from December 29, 2001, until the date of entry of judgment. The Clerk of Court is directed to close this case.

Dated: Brooklyn, New York
      February 25, 2009

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge